# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

LEE BINION,                                )
                                           )
      Plaintiff,                        )
                                           )
    vs.                                )      **Case No. 4:04CV767SNL**
                                           )
SOUTHWESTERN BELL TELEPHONE                )
YELLOW PAGES, INC.,                        )
                                           )
      Defendant.                        )

## MEMORANDUM

Plaintiff has filed this employment discrimination action alleging that defendant violated Title VII and the Missouri Human Rights Act (MHRA), §213.010 *et. seq.* on the basis of race by 1) removal of revenue from plaintiff's sales assignments; 2) the subsequent imposition of a "Penalty BOTS" on plaintiff's Performance Factor Bonus; and 3) denial of plaintiff's request to transfer to the defendant's Springfield, Missouri office. This matter is before the Court on the defendant's motion for summary judgment (#24), filed June 13, 2005. After granting extensions of time for filing responsive pleadings, all responsive pleadings have now been filed and the matter is ripe for disposition. This cause of action is set for trial on the Court's trial docket of October 3, 2005.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really

do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Although summary judgment should seldom be granted in employment discrimination cases, it is proper in those cases wherein the plaintiff fails to establish a factual dispute on an essential element of the case. Snow v. Ridgeview Medical Center, 128 F.3d. 1201, 1205 (8th Cir. 1997), citing Bialas v. Greyhound Lines, Inc., 59 F.3d. 759, 762 (8th Cir. 1995). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one

party has failed to present evidence sufficient to create a jury question is an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d. 1053, 1055 (8th Cir. 2000)(citations omitted). The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); see, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) citing Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) quoting Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

Although the Court is required to view the facts in the light most favorable to the non-moving party, it should not accept "unreasonable inferences or sheer speculation as fact.". Howard v. Columbia Public School District, et. al., 363 F.3d. 797, 800 (8th Cir. 2004). A plaintiff may not "simply point to allegations made in [her] complaint but must identify and provide evidence of `specific facts creating a triable controversy." Howard, at 800 quoting Jaurequi v. Carter Manufacturing Co., 173 F.3d. 1076, 1085 (8th Cir. 1999); see also, Crossley v. Georgia-Pacific Corp., 355 F.3d. 1112, 1113 (8th Cir. 2004). Furthermore, a plaintiff may not simply provide a massive record expecting the Court to sift through it in an effort to find support

for the plaintiff's allegations.  Howard, at 800-01 (citations omitted).  The Court is only obligated

to consider "admissible evidence and disregard portions of various affidavits and depositions that

were made without personal knowledge, consist of hearsay, or purport to state legal conclusions

in fact.".  Howard, at 801 *citing* Shaver v. Independent Stave Co., 350 F.3d. 716, 723 (8th Cir.

2003).

    The facts in this case are largely undisputed.[1]  Defendant SBC produces the "Yellow

Pages" telephone directories.[2]  In 1996, plaintiff began his employment with defendant as an

inside telephone sales representative in the St. Louis office.  Defendant's Exhibit A - Plaintiff's

Deposition, pgs. 28, 38.[3]  In early 2000 he was promoted to his current position in the St. Louis

office as an outside sales representative (also referred to as an account representative or premise

---

[1]As evidence in support of their positions, the parties have submitted (including but not
limited to) portions of the depositions testimony of plaintiff, defendant's managerial personnel,
and co-workers; the 2001 Collective Bargaining Agreement (CBA) in effect during the relevant
time-period; affidavits of plaintiff's co-workers and defendant's management personnel; plaintiff's
work record; plaintiff's co-workers' work records; various administrative records of defendant;
and internal memorandum of defendant.  Not all of the submitted evidence was considered by the
Court as will be explained later in this memorandum.  Furthermore, as will also be explained later
in this memorandum, plaintiff failed to properly dispute the defendant's Statements of Undisputed
Material Facts (#25); thus, requiring the Court to deem said facts as admitted.

[2]The "Yellow Pages" are several publications, organized by geographical regions,
providing a listing of commercial/business/professional enterprises.  Such enterprises pay a fee to
advertise their business and have an address and telephone number listed in a particular directory.

[3]Defendant has submitted multiple copies of certain depositions, with the motion and its
reply brief, highlighting different portions of these depositions.  For example, a portion of
plaintiff's deposition has been submitted with the motion as Defendant's Exhibit A; whereas,
another portion of plaintiff's deposition has been submitted with defendant's reply as Defendant's
Exhibit A-1.  The subject depositions are plaintiff's (Def. Exh. A and A-1); Mary Faser (Def. Exh.
C and C-1); Rick Kruckemeyer (Def. Exh. E and E-1); and Carol Garrett (Def. Exh. F and F-1).
When referring to one of the two deposition portions for any one of these deponents, the Court
will note the distinction.  Furthermore, in those instances wherein the parties have submitted
duplicate exhibits, the Court will only cite to one exhibit and the Court's choice of citation is not
indicative of any bias or preference.

representative).[4]  Plaintiff's Deposition (Def. Exh. A), pgs. 52-53.  Plaintiff, during the relevant

time-period was a member of the Communications Workers of America ("the Union") and

covered by the 2001 Collective Bargaining Agreement between the Union and the defendant.

Defendant's Exhibit B.

In his job as a sales representative, plaintiff was responsible for selling defendant's

advertising to current and prospective customers for publication in any one of defendant's

regional directories.  Plaintiff's Deposition (Def.Exh. A), pg. 79; Faser Deposition (Def.Exh. C),

pg. 17.  The time period set aside for selling advertising within a particular regional directory is

referred to as a "sales canvass".  Each regional directory has a separate sales canvass associated

with that directory and each sales canvass has a certain number of days in which the sales

representatives can make sales.  Defendant's Exhibit D - Affidavit of Fritzee Reeves (2003 Sales

Administration Manager in St. Louis office); Defendant's Exhibit E - Deposition of Rick

Kruckemeyer, pg. 46.  Prior to each sales canvass, the sales representatives receive a list of

current and potential customers (aka "sales assignments") for which they are responsible for

contacting.  For each canvass, the sales representatives are allotted a certain number of "tolerance

days"; i.e., a predetermined number of days of excusable absence from that particular sales

canvass.  Additionally, each sales representative, prior to the distribution of their sales assignment,

is asked to notify their sales manager or assignment manager of any additional sales days that s/he

will require for absence; i.e., requested scheduled days off.  Plaintiff's Deposition (Def.Exh. A),

pgs. 80-83; Reeves Affidavit.

---

[4]An inside sales representative contacts customers via the telephone.  An outside sales
representative actually goes to the customer's business location and makes personal contact.
Faser Depo. (Def.Exh. C-1), pg. 17.

If a sales representative notifies his or her superior before the sales assignments are distributed that s/he will have additional absences (beyond the allotted tolerance days), that sales representative's assignment will be reduced based on the number of days s/he will be available to conduct sales in that canvass. Plaintiff's Deposition (Def.Exh. A), pgs. 84-85. If a sales representative is absent from a sales canvass more than the total number of allotted tolerance days and their scheduled days off, that representative will be penalized by having accounts, or a certain value of revenue, removed from that representative's sales assignment. Plaintiff's Deposition (Def.Exh. A), pgs. 101-03; Kruckemeyer Depo., pgs. 33, 52-55; Reeves Affidavit. This practice of removing accounts or revenue is referred to as the imposition of "Penalty BOTS[5].

Furthermore, pursuant to company policy and the CBA, anytime accounts are removed from a sales representative's sales assignment, defendant must also impose a Penalty BOTS on his/her Performance Factor Bonus[6]. Kruckemeyer Depo. (Def.Exh. E), pgs. 33-35; Defendant's Exhibit B - CBA, pg. 101. Application of a Penalty BOTS to a Performance Factor Bonus involves calculating the value of the revenue or accounts removed from the sales representative's assignment, and then subtracting that revenue from any positive net revenue (upon which the sales representative's bonus was originally based). The imposition of Penalty BOTs is non-discretionary. Defendant's Exhibits H and I.

---

[5]"BOTS" stands for "Book on the Street" or the dollar value of the representative's account assignment. Defendant's Exhibit F - Deposition of Carol Garrett, pg. 10; Defendant's Exhibit G - Affidavit of Carol Garrett.

[6]The "Performance Factor Bonus" is a monetary reward to sales representatives who complete their sales assignment and earn a positive net revenue on that assignment. Plaintiff's Deposition (Def.Exh. A), pgs. 87-88; Garrett Depo. (Def.Exh. F), pgs. 9-12. If a sales representative does not earn a positive net revenue on his/her sales assignment, s/he is not eligible for a Performance Factor Bonus. Garrett Affidavit.

On or before January 27, 2003, the sales assignments for the St. Louis area canvass were distributed to the sales representatives, including the plaintiff. Defendant's Exhibit J; Reeves Affidavit. The number of tolerance days allotted for the St. Louis canvass was twenty (20) days. Kruckemeyer Depo. (Def.Exh. E), pgs. 52-55; Reeves Affidavit. Plaintiff did not notify either his sales manager or the assignment manager before the sales assignments were distributed that he would require more than the twenty (20) allotted tolerance days. Since he did not have any scheduled absences (in addition to the tolerance days), no revenue was removed from plaintiff's sales assignment before the assignments were made and distributed.

On or about January 29, 2003 plaintiff commenced a lengthy leave from employment due to a broken jaw. Plaintiff's Depo. (Def.Exh. A), pg. 93; Defendant's Exhibit K; Defendant's Exhibit L. Plaintiff called his supervisor, Mary Faser, to inquire as to what date he needed to return to work in order to avoid the imposition of a Penalty BOTS. Plaintiff's Depo. (Def.Exh.A), pgs. 60, 96, 101, 104, and 114; Faser Depo., pgs. 38-40. Faser was not certain and told plaintiff she needed to check on it and would call him back. Plaintiff's Depo. (Def.Exh.A), pg. 114; Faser Depo.(Def.Exh. C), pg. 39; Faser Depo. (Def.Exh. C-1), pgs. 40. Faser consulted with Rick Krukemeyer (General Manager) and Frank Ginther (Assignment Manager) as to how many tolerance days had been allotted for the St. Louis canvass. Faser Depo. (Def.Exh. C-1), pgs. 50-51; Kruckemeyer Depo. (Def.Exh. E), pgs. 53-55. Upon learning that twenty (20) days had been allotted for the St. Louis canvass, Faser looked at a calendar and calculated the date by which she believed plaintiff had to return to work in order to avoid the imposition of a Penalty BOTS. Faser Depo. (Def.Exh. C-1), pgs. 51-52, 58-62. Faser called plaintiff and informed him, that based upon her calculations, he needed to return to work by April 1, 2003 in order to avoid

the imposition of a Penalty BOTS. Plaintiff's Depo. (Def.Exh. A), pg. 116; Faser Depo. (Def. Exh. C), pgs. 49-50.

Fritzee Reeves took over the position of Sales Administration Manager in early March 2003. Reeves Affidavit. In her capacity of Sales Administration Manager, she was responsible for overseeing the running of the sales assignments for each sales representative for each sales canvass. Part of this responsibility included tracking whether any sales representative had absences that exceeded the total number of tolerance days and scheduled absences within the assigned canvass. Reeves Affidavit. On or about March 20, 2003 Reeves became aware that plaintiff had been absent more than his allotted tolerance days for the St. Louis canvass, and that he had no scheduled absences. Reeves notified Faser that since plaintiff has used up his allotted tolerance days and had no scheduled absences, plaintiff would have a Penalty BOTS imposed on his sales assignment and Performance Factor Bonus if he missed anymore sales days. Reeves Affidavit; Defendant's Exhibit II.

Faser realized that she had made a mistake in calculating plaintiff's return date, and so informed plaintiff's new supervisor, Steve Speno. Faser Depo. (Def.Exh. C), pgs. 80-81. Speno and Faser then called the plaintiff to inform him of the miscalculation and to apologize for the error. They also explained to him that unfortunately plaintiff had exceeded the tolerance days, and since he did not have any scheduled absences he would be penalized for the time off. Plaintiff's Depo. (Def.Exh. A), pgs. 117-19; Faser Depo. (Def.Exh. C-1), pgs. 77-79; Defendant's Exhibit M - Speno Deposition, pgs. 39-41.

Despite the phone call informing him of the miscalculation, plaintiff did not return to work until April 1, 2003. Since plaintiff had been absent in excess of the twenty (20) allotted tolerance days and had no scheduled absences, accounts were removed from his sales assignment; and, a

Penalty BOTS was imposed on his Performance Factor Bonus. Reeves Affidavit; Kruckemeyer Depo. (Def.Exh. E), pgs. 52, 57-58; Defendant's Exhibit G - Affidavit of Carol Garrett (Sales Support Assistant); and Defendant's Exhibit N. The accounts removed approximately equaled $4000 in revenue; however, plaintiff still earned a positive net revenue on his sales assignment. Since the Penalty BOTS were assessed on that revenue, his Performance Factor Bonus was reduced by approximately $4371.00. Reeves Affidavit; Garrett Affidavit; Defendant's Exhibit O, and Defendant's Exhibit P.

Plaintiff filed a grievance on the imposition of the Penalty BOTS, which was denied at the local level. Kruckemeyer Depo. (Def.Exh. E), pg. 56; Defendant's Exhibits Q, R. and S. Plaintiff appealed the denial to the general level, and again, it was denied. Defendant's Exhibits T and U. At no time during the grievance process did plaintiff ever allege that the removal of accounts for his St. Louis canvass and the subsequent imposition of the Penalty BOTS on his Performance Factor Bonus was racially motivated.

In 2003, John Sanborn (Caucasian), Francine Dugger (African American), Jennifer Ahola (Caucasian), and Eric Ruegg (Caucasian) all had accounts removed and Penalty BOTS imposed on their Performance Factor Bonus for absences exceeding the number of tolerance days allotted for a sales canvass. Garrett Affidavit; Garrett Depo. (Def. Exh. F-1), pg. 15-16. Another sales representative, Francis Clark (female Caucasian), had accounts removed for exceeding the number of tolerance days allotted for her sales canvass, but did not have a Penalty BOTS imposed on her Performance Factor Bonus. Francis Clark did not have a positive net revenue on her sales assignment; therefore, she was not eligible for a Performance Factor Bonus. Plaintiff's Exhibit 1 - Affidavit of Francis Clark; Garrett Depo. (Def. Exh. F-1), pg. 15-16.

On September 25, 2003 plaintiff filed an administrative charge of race discrimination with the EEOC and the MCHR in which he alleged that the removal of assignments and the imposition of the Penalty BOTS on his Performance Factor Bonus was racially motivated. Defendant's Exhibit W.

In the Fall of 2003, plaintiff submitted a Job Vacancy Request for a transfer to an open account representative position in Springfield, Missouri. Plaintiff's Deposition (Def.Exh. A), pg. 197-98; Defendant's Exhibit X. Pursuant to company policy, in order for a sales representative to be eligible for a transfer, s/he cannot have a "less than satisfactory" rating on any category of their most recent job performance evaluation. Kruckemeyer Depo. (Def.Exh. E), pgs. 65-66; Defendant's Exhibit GG - Affidavit of Maureen Karas (Senior Human Resources Manager); Defendant's Exhibit Y - Affidavit of Jamie Theret (General Manager of defendant's Springfield, Missouri office). This requirement can be waived by the General Manager of the office where the job posting originated. Jamie Theret was the General Manager of the Springfield office (at the time of plaintiff's transfer request) and routinely did not waive this requirement. Theret Affidavit; Defendant's Exhibit Z. When posting the job opening for which the plaintiff applied, Theret noted on the posting that he would not accept a candidate with a "less than satisfactory" rating on any category of the most recent job performance evaluation. Theret Affidavit; Defendant's Exhibit X[7].

At the time of plaintiff's request to transfer to the Springfield office, his most recent job performance evaluation was his 2002 Job Performance Appraisal. It was completed and signed off by plaintiff in May 2003. Defendant's Exhibit AA. Plaintiff's 2002 Job Performance

---

[7]On the second page of Exhibit X, at the top right hand corner, as part of the job description, there is a statement "Accept Less Than Satisfactory". Theret marked this job prerequisite as "No".

Appraisal had a "needs improvement" rating in the category of "Administrative Performance". Defendant's Exhibit AA. Theret did not accept plaintiff's transfer request because of this "needs improvement" rating. Theret Affidavit. Rick Kruckemeyer had no involvement in the decision to deny plaintiff's request for transfer to the Springfield office. Kruckemeyer Depo. (Def.Exh. E-1), pgs. 65-67.

Plaintiff filed an amended charge of discrimination with the EEOC and MCHR on February 7, 2004 adding an allegation that his job transfer request was denied on the basis of race. Defendant's Exhibit BB. Plaintiff received his Right-to-Sue notice from the MCHR on or about March 24, 2004 (Defendant's Exhibit CC), and his Right-to-Sue notice from the EEOC on or about April 14, 2004 (Defendant's Exhibit DD).

Before addressing the legal issues raised by the instant motion, the Court must address two (2) other matters. Firstly, after careful review of the plaintiff's responsive pleadings, the Court concurs with defendant that plaintiff has failed to properly dispute the defendant's Statement of Undisputed Material Facts. Local Rule 4.01(E) states:

> A memorandum in support of a motion for summary judgment
> shall have attached a statement of uncontroverted material facts,
> set forth in a separately numbered paragraph for each fact, indicating
> whether each fact is established by the record, and, if so, the
> appropriate citations. Every memorandum in opposition shall
> include a statement of material facts as to which the party contends
> a genuine issue exists. Those matters in dispute shall be set forth
> with specific references to portions of the record, where available,
> upon which the opposing party relies. The opposing party also shall
> note for all disputed facts the paragraph number from movant's listing
> of facts. All matters set forth in the statement of the movant shall be
> deemed admitted for purposes of summary judgment unless specifically
> controverted by the opposing party.

Plaintiff's Statement of Undisputed Facts consists of general averments, vague denials, opinion, and/or recitation of "facts" that are immaterial to the issues in the case or the facts contained in

the defendant's Statement of Undisputed Facts. For example, in answer to ¶2 of defendant's Statement of Undisputed Facts, plaintiff takes umbrage with "the idea that an employee MUST indicate an exact number of days he or she will be absent." Nowhere in the evidentiary record does plaintiff point to a factual reference that an employee does not have to indicate to his or her manager the number of scheduled absences s/he needs to take. Furthermore, ¶2 does not state that an employee **must** indicate the number of scheduled absences; it states only that prior to the sales assignment, "a sales representative is asked to indicate the number of sales days he or she will be absent . . ."; a fact plaintiff admits in his deposition. In answer to ¶4, plaintiff argues that he does not know the meaning of "allotted" and goes on to state that Mary Faser told him he would not be penalized if he returned by April 1, 2003. This is totally unresponsive to ¶4 which only stated that plaintiff did not notify either his sales manager or the assignment manager prior to the distribution of the sales assignments of any scheduled absences. Again, a fact admitted by plaintiff in his deposition. Thus, the Court finds that all matters set forth in the defendant's Statement of Undisputed Material Facts are deemed admitted for purposes of the instant summary judgment motion. *See,* Ruby v. Springfield R-12 Public School District, 76 F.3d. 909, 911 n.6 (8th Cir. 1996).

Secondly, in support of his contention that defendant, more precisely Rick Kruckemeyer, had a racial bias, plaintiff submits the affidavit of Harry Diaz. This Court has addressed the matter of Mr. Diaz' testimony on four (4) separate occasions and has consistently held that Mr. Diaz' testimony, by deposition or affidavit or any other means, was not admissible since his disclosure by the plaintiff was untimely. *See*, Court Orders #16, filed June 2, 2005; Order #17, filed June 6, 2005; Order #28, filed June 15, 2005; and Order #43, filed August 10, 2005. Inadmissible evidence obtained during (or outside) discovery cannot be used to defeat summary judgment.

Henthorn v. Capitol Communications, 359 F.3d. 1021, 1026 (8th Cir. 2004); Shaver, at 723;

Mays v. Rhodes, 255 F.3d. 644, 648 (8th Cir. 2001). Mr. Diaz' affidavit has already been struck

by the Court and; therefore, will not be considered when evaluating the evidentiary record in

connection with the instant summary judgment motion.

Plaintiff contends that the removal of revenue from his sales assignments, the imposition of

the Penalty BOTS on his Performance Factor Bonus, and the denial of his request for transfer to

defendant's Springfield, Missouri office was racially motivated because he believes that other

similarly-situated white employees received favorable treatment. Defendant contends that

plaintiff's claims must fail because 1) he has failed to make a *prima facie* case of race

discrimination as to the removal of accounts, the imposition of the Penalty BOTS, and the denial

of the transfer request because he cannot demonstrate that he was qualified to keep his accounts

and not suffer a Penalty BOTS or qualified to transfer to Springfield; 2) he has failed to make a

*prima facie* case of race discrimination as to removal of accounts, the imposition of the Penalty

BOTS, and the denial of the transfer request because he cannot demonstrate that similarly-situated

white employees received favorable treatment; and 3) he has failed to show that the defendant's

reasons for its adverse employment decisions were a pretext for intentional race discrimination.

### Removal of Accounts and Imposition of Penalty BOTS

Since plaintiff's claims are based upon inferences to be drawn from circumstantial

evidence[8], his claims will be analyzed under the familiar three-step burden-shifting framework

---

[8]Plaintiff conceded at his deposition that no one ever made racially discriminatory remarks
to him or engaged in racially offensive conduct directed toward him. Plaintiff's Depo. (Def.Exh.
A), pg. 66.

established in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).[9]  Plaintiff must first present a *prima facie* case of intentional race discrimination.  The burden then shifts to defendant to articulate a legitimate, non-discriminatory reason(s) for its adverse employment decision.  Finally, if the defendant meets its burden, plaintiff must show that the proffered non-discriminatory reason(s) is merely a pretext for unlawful race discrimination.  At all times, plaintiff retains the ultimate burden of proving that he was the victim of intentional discrimination.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502 (1993); <u>Texas Dept. of Cmty Affairs v. Burdine</u>, 450 U.S. 248 (1981).

In the instant action, to establish a *prima facie* case of race discrimination based upon a disparate treatment claim, plaintiff must show that 1) he is a member of a protected group; 2) he was meeting the legitimate expectations of his defendant employer; 3) he suffered an adverse employment action; and 4) circumstances existed giving rise to an inference of discrimination, such as similarly situated employees not members of the protected group were treated more favorably.  <u>Tatum, et. al. v. City of Berkeley</u>, 408 F.3d. 543, 553 (8th Cir. 2005); <u>Tolen v. Ashcroft</u>, 377 F.3d. 879, 882 (8th Cir. 2004); <u>Wheeler v. Aventis Pharmaceuticals</u>, 360 F.3d. 853, 857 (8th Cir. 2004).  In establishing his *prima facie* case of intentional race discrimination, Binion must produce sufficient evidence to support an inference that he was disciplined (i.e., accounts removed and a Penalty BOTS imposed on his Performance Factor Bonus) for racially-motivative reasons. The threshold of proof required in establishing a *prima facie* case is "minimal".  <u>Pope v. ESA Services</u>, 406 F.3d. 1001, 1007 (8th Cir. 2005); <u>Turner v. Honeywell Fed.Mfg. & Techs., L.L.C.</u>, 336 F.3d.716, 720 (8th Cir. 2003). "The elements necessary to establish a prima facie

---

[9]Plaintiff's Title VII and MHRA claims are both analyzed under the <u>McDonnell Douglas</u> burden-shifting framework.  <u>Herrero v. St. Louis University Hospital</u>, 109 F.3d. 481, 484 (8th Cir. 1997).

case vary according to the circumstances of the alleged discrimination." Favors v. Fisher, 13 F.3d. 1235, 1237 (8th Cir. 1994) *quoting* Jones v. Frank, 973 F.2d. 673, 676 (8th Cir. 1992).

Defendant contends that plaintiff was not qualified to keep all of his accounts for the St. Louis canvass nor qualified to avoid having a Penalty BOTS imposed on his Performance Factor Bonus because he had missed work more than his allotted tolerance days. Plaintiff was aware and understood the concept of "tolerance days" as they relate to a sales canvass. Plaintiff's Depo. (Def.Exh. A), pgs.80-83. Plaintiff was aware and understood that sales representatives were obligated to inform their sales manager/assignment manager, before a sales assignment has been made in any particular canvass, of any additional days of absence that the sales representative requires. Plaintiff's Depo. (Def.Exh. A), pgs. 80-85. Finally, plaintiff knew and understood that, if during a sales canvass, a representative misses more days than the total number of tolerance days and scheduled absences, defendant removes a certain number of accounts, or a certain value of revenue, from that sales representative's sales assignment. Plaintiff's Depo. (Def.Exh. A), pgs. 101-03. It is undisputed that 1) twenty (20) days were allotted to the St. Louis canvass as "tolerance days"; 2) plaintiff did not inform his sales manager/assignment manager of any additional days of absence prior to the distribution of the sales assignments; and 3) plaintiff was absent from work from January 29, 2003 through March 31, 2003 (in excess of twenty days). Plaintiff's only response to these established facts is that he "came back to work on the day he was told to return to avoid the Penalty". This response fails to show that he was "qualified" to avoid having sales accounts removed for missing too many work days. Furthermore, it is undisputed that Speno and Faser called plaintiff prior to April 1, 2003 to tell him of the calculation error and that he had to return to work (presumably the next work day) in order to avoid having his sales accounts removed. Plaintiff, despite this information, chose not to return to

work until April 1, 2003.  Plaintiff has failed to establish Element 2 of his *prima facie* case as to the removal of his sales accounts.

The same is true of plaintiff's *prima facie* case as to the imposition of the Penalty BOTS on his Performance Factor Bonus.  It is undisputed that pursuant to the CBA and defendant's policies, that anytime accounts or revenue is removed from a representative's sales assignment, defendant company must impose a Penalty BOTS on the sales representative's Performance Factor Bonus.  Plaintiff has sales accounts removed (due to the excess absences), and since he still earned a positive net revenue at the end of the canvass, and would have had a Performance Factor Bonus, a Penalty BOTS was imposed (reducing his Performance Factor Bonus by approximately $4371.00).  Plaintiff has offered no affirmative evidence that under these undisputed facts, he should not have had a Penalty BOTS imposed on his Performance Factor Bonus.  Plaintiff has failed to establish Element 2 of his *prima facie* case as to the imposition of the Penalty BOTS on his Performance Factor Bonus.

Plaintiff has also failed to establish Element 4 of his *prima facie* case as to both the removal of accounts and the imposition of the Penalty BOTS on his Performance Factor Bonus.  At the *prima facie* stage, the plaintiff's burden in showing that he and other "similarly-situated" white employees were treated differently is not onerous.  The threshold test at the *prima facie* stage is "low".  Rogers v. U.S. Bank, N.A., 417 F.3d. 845, 852-53 (8th Cir. 2005); Wheeler v. Aventis Pharmaceuticals, at 857.  Under this "low-threshold" standard, Binion must show that he and the identified[10] individuals were "involved in or accused of the same or similar conduct and

---

[10]In his deposition, plaintiff identified only two "outside the class" (2) individuals whom he believed were similarly-situated but treated more favorably: Francis Clark and Janice Wander.  In its pleadings, defendant has identified these additional persons as "similarly-situated" to plaintiff (but not treated more favorably): John Sanborn, Francine Dugger, Jennifer Ahola, and Eric Ruegg.  Defendant's Statement of Undisputed Facts (#25), pg. 2, ¶7.

[were] disciplined in different ways." Rogers, at 852 *quoting* Wheeler, at 857. The undisputed facts show that Sanborn, Dugger, Ahola, Ruegg, and Clark all had accounts removed and Penalty BOTS imposed upon their Performance Factor Bonus for absences exceeding the number of tolerance days in a sales canvass. Reeves Affidavit; Garrett Affidavit. Ms. Wander did not have any accounts removed or a Penalty BOTS imposed on her Performance Factor Bonus because she did not have any absences which exceeded the tolerance days for any canvasses within the relevant time-period. Garrett Affidavit. Plaintiff has failed to set forth any affirmative evidence showing that these individuals and plaintiff were involved in the same or similar conduct (absences in excess of tolerance days and scheduled absences); yet were disciplined in different ways. Plaintiff has failed to establish Element 4 of his claim as to removal of sales accounts.

As for plaintiff's claim regarding imposition of a Penalty BOTS on his Performance Factor Bonus, he has established Element 4 in regards to Ms. Clark. It is undisputed that both he and Ms. Clark had exceeded the number of allotted tolerance days and scheduled absences for their respective sales canvass; yet, although a Penalty BOTS was imposed on plaintiff's Performance Factor Bonus, a Penalty BOTS was **not** imposed on Ms. Clark's Performance Factor Bonus.[11] However, although plaintiff may have established Element 4 as regards this one comparison, his *prima face* case of intentional race discrimination as to his claims regarding removal of accounts and the imposition of a Penalty BOTS on his Performance Factor Bonus still fails because of his failure to establish Element 2 on both claims.

*Assuming arguendo* that plaintiff had established his *prima facie* case of race discrimination as to his claims regarding removal of his sales accounts and the imposition of the

---

[11]The differences between the circumstances of Ms. Clark and the plaintiff are relevant only to the issue of whether these two individuals are similarly situated for purposes of showing pretext. Rodgers, at 852-53.

Penalty BOTS on his Performance Factor Bonus, the burden now shifts to the defendant to articulate a legitimate, nondiscriminatory reason for removing Binion's sales accounts and imposing a Penalty BOTS on his Performance Factor Bonus. "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." Rogers, at 853 *quoting* Floyd v. State of Missouri Dept. of Soc. Servs., Div. of Family Services, 188 F.3d. 932, 936 (8th Cir. 1999). Defendant has met this next level of inquiry by articulating a legitimate, non-discriminatory reason for removal of sales accounts and imposition of a Penalty BOTS on plaintiff's Performance Factor Bonus: plaintiff had not told his sales manager/assignment manager of the need for any additional schedule absences during the St. Louis sales canvass, and had exceeded the number of allotted tolerance days (20) prior to returning to work. Accordingly, the ultimate burden now falls on plaintiff to produce evidence sufficient to create a genuine issue of material fact regarding whether defendant's proffered non-discriminatory reason is a pretext for racial discrimination.

Binion attempts to prove pretext with "evidence" of disparate treatment of himself and similarly-situated white employees. Upon review of the evidentiary record before this Court, the Court finds that plaintiff has failed to raise a triable question of material fact as to whether defendant's legitimate non-discriminatory reason for removal of his sales accounts and/or the imposition of a Penalty BOTS on his Performance Factor Bonus was a pretext for race discrimination.

Plaintiff attempts to prove disparate treatment by demonstrating that he was treated less favorably than similarly-situated white employees. At the pretext stage of the McDonnell Douglas burden-shifting framework, the test for determining whether employees are similarly-situated to the plaintiff is a "rigorous one". Rogers, at 853; Cherry, at 479; Wheeler, at 857. Binion must

show that he and the white employees were similarly situated in all relevant respects. Rogers, at 853 *citing* Wheeler, at 858. "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Cherry, at 479 *quoting* EEOC v. Kohler Co., 335 F.3d. 766, 776 (8th Cir. 2003). Plaintiff has offered no affirmative evidence whatsoever that any of the identified "similarly-situated" white employees (including Ms. Clark) were treated any more favorably than he in connection with the removal of accounts. His oft repeated refrain regarding this claim is that he was told by Faser that if he returned by April 1, 2003 no sales accounts would be removed. This assertion misses the point. The defendant does not deny that a mistake was made in calculating plaintiff's return date; however, plaintiff has failed to set forth any affirmative evidence showing that any white employee, whose absences were in excess of allowable tolerance days and scheduled absences due to defendant's calculation error, was allowed to return to work without having any accounts or revenue removed from his or her sales assignment. Binion had the burden of demonstrating by a preponderance of evidence that there were individuals similarly situated in all relevant aspects as regards removal of accounts claim. His unsubstantiated allegations are insufficient to create a triable material issue of fact on this claim.

As for his Penalty BOTS claim, plaintiff repeatedly cites to Ms. Clark. His evidence regarding Ms. Clark is her affidavit in which she attests that despite having absences in excess of the total number of tolerance days and scheduled absences, and despite having accounts removed, a Penalty BOTS was not imposed. Plaintiff's Exhibit 1 - Affidavit of Francis Clark. She further attests that she was told by Kruckemeyer that a Penalty BOTS would not be imposed "due to

illness". The Court finds that Ms. Clark and plaintiff were not "similarly-situated" for several reasons.

Firstly, unlike the plaintiff, Ms. Clark did not have a positive net revenue on her sales assignment at the end of the canvass. Her failure to have a positive net revenue made her ineligible for a Performance Factor Bonus. A Penalty BOTS could not be imposed, for all practical purposes, without a Performance Factor Bonus. Although technically one should have been imposed but for a clerical error, it would not have made a difference. Secondly, plaintiff has failed to set forth any affirmative evidence that any other "similarly-situated" white employee; i.e. a white employee who had absences in excess of the total number of tolerance days and scheduled absences, had accounts removed from his or her sales assignment, and had a positive net revenue at the end of the sales canvass, did not have a Penalty BOTS imposed on his or her Performance Factor Bonus. Finally, assuming that Kruckemeyer had told Ms. Clark that he had not imposed a Penalty BOTS because of her illness, such a statement does not show that these two people were treated differently because of race. It could easily be said that Kruckemeyer allegedly treated Ms. Clark differently because she is a woman (whereas plaintiff is a man). Plaintiff has simply failed to meet the rigorous standard of proving that he and Ms. Clark were sufficiently similarly-situated in all relevant aspects so that defendant's difference in treatment creates a triable issue of material fact as to whether defendant's "mistake" was really a pretext for race discrimination.

In sum, there are no facts in the record that support the conclusion that defendant's stated reason for removal of plaintiff's sales accounts and the imposition of a Penalty BOTS on his Performance Factor Bonus was a pretext for race discrimination. Defendant has admitted a mistake in calculating the plaintiff's return date which would have avoided the removal of the accounts and the subsequent imposition of the Penalty BOTS on his Performance Factor Bonus.

Plaintiff was given notice of the mistake and chose not to return to work earlier than he had originally been told. Whether or not the defendant should have created an "exemption" for the plaintiff due to its mistake is not the issue for this Court to decide. The Court's review is strictly limited to determining whether plaintiff has offered sufficient evidence from which a reasonable juror could conclude that the articulated reason for defendant's adverse employment action was a pretext for race discrimination. The courts are not to sit as a "super-personnel department" and it is not unlawful for an employer to make employment decisions on erroneous information. Title VII "do[es] not prohibit employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices." Hill v. St. Louis University, 123 F.3d. 1114, 1120 (8th Cir. 1997). Plaintiff's assertion of unfairness is insufficient to raise the specter of pretext. This Court is not to review "the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination or unlawful retaliation." Logan v. Liberty Healthcare Corp., 416 F.3d. 877, 883 (8th Cir. 2005); Griffin v. Super Valu, 218 F.3d. 869, 872 (8th Cir. 2000).

### Denial of transfer request to Springfield, Missouri

Again, since plaintiff's claim regarding the denial of his transfer request is based upon circumstantial evidence, the burden-shifting framework of McDonnell Douglas is applicable. This claim too fails because plaintiff has failed to establish a *prima facie* case of race discrimination; and he has failed to establish that the defendant's proffered reason for denying the transfer was a pretext for race discrimination.[12]

---

[12]The *prima facie* standard and pretext standard, especially with regard to similarly-situated white employees, previously reviewed by the Court is equally applicable to this claim.

Defendant first contends that plaintiff was not qualified to transfer to Springfield, Missouri. It is undisputed that, pursuant to company policy, a sales representative is not eligible to transfer to another sales office if s/he has a "less than satisfactory" rating in any one of the categories on his or her most recent job performance evaluation. It is further undisputed that only the General Manager of the office to which the employee wishes to transfer may waive this requirement.

Plaintiff's only evidence regarding his qualifications to transfer is 1) there is no "written" document evidencing this policy; 2) a fellow employee, Steve Speno, testified that an employee need only to show an "overall satisfactory appraisal to transfer"; and 3) that Kruckemeyer altered plaintiff's job performance appraisal in order to prevent his transfer. After careful consideration of these arguments, the Court finds that plaintiff has failed to meet the second element of the *prima facie* case with respect to his denial of transfer claim.

Whether there is a "written" policy of which plaintiff is aware of is irrelevant. Plaintiff has offered no affirmative evidence which disputes the testimony of Karas, Kruckemeyer, and Theret with regard to the existence of such a policy.

Secondly, at the time of plaintiff's transfer request, Speno was no longer plaintiff's supervisor.[13] Furthermore, his deposition testimony clearly shows that he lacked any real knowledge of defendant's policy regarding the requirements for a lateral transfer.

> "Q [defendant's counsel]: When did you first become aware
> that Mr. Binion requested a transfer?
>
> A [Speno]: I don't remember the specific dates, but I, at that
> time he was no longer reporting to me.
>
> Q: Who was his supervisor at that time?

---

[13]He had returned to being an account representative, the same as the plaintiff.

A: Reggie Drake.

Q: Do you know what the requirements are for a lateral transfer?

A: Not specifically.

Q: What's your best understanding?

A: Satisfactory appraisal.

Q: Did Mr. Binion have a satisfactory appraisal back in 2003?

A: Yes.

Q: You don't have any specific knowledge as to why Mr. Binion's transfer request was denied, do you; or do you?

A: Other than they didn't want him to go, he was too valuable an employee.

Q: Who made, to your knowledge, who made the decision as to Mr. Binion shouldn't go?

A: I do not know.

Q: When you refer to "they", who are you referring to?

A: Our peers, just in speculation.

Q: Would that include Mr. Kruckemeyer?

A: No.

Q: Why do you say no?

A: Because he wasn't the one I talked to, just my peers, he's an upper level, not my peers.

Q: So, you are basing it on what other people who are sales managers told you?

A: Yes.

Q: Were you aware of any type of transfers, since the period of time that you have been a sales manager, that were approved in the premise sales department for people with less than

overall satisfactory appraisals?

A: I don't know for a fact.

Plaintiff's Exhibit 4- Deposition of Steve Speno, pgs. 57-58.

Clearly, Speno was not knowledgeable of the defendant's requirements for a lateral transfer and was simply offering a his "best guess". Furthermore, he had no facts at his disposal as to the reason for the denial of plaintiff's transfer request.

Finally, after careful review of the evidentiary record before the Court, it is clear that plaintiff's assertions regarding the "altering" of his job performance appraisal regards his 2003 appraisal, not his 2002 job performance appraisal which was the most recent job performance appraisal available at the time of his transfer request. Plaintiff applied for the transfer to the Springfield, Missouri office in the Fall of 2003. His most recent job performance appraisal available was his 2002 appraisal, prepared by Mary Faser on or about April 28, 2003 and signed by the plaintiff on or about May 16, 2003. The job appraisal which plaintiff mistakenly refers to in his deposition and opposition brief as having been changed due to the removal of accounts was his 2003 appraisal which was not completed by Reggie Drake until March 31, 2004, well after plaintiff had requested to transfer and Theret had rejected the request.

Plaintiff has offered no affirmative evidence to establish that he was qualified to transfer to the Springfield office. He has not provided any evidence to dispute the fact that the job posting clearly stated that anyone with a "less than satisfactory" rating would not be accepted for the position. He has not offered any affirmative evidence that Theret alone had the right to waive this condition or that Theret alone made the decision to reject plaintiff's transfer request because plaintiff had a "less than satisfactory" rating on one of the categories of his applicable 2002 job

performance appraisal. Plaintiff has failed to establish the second element of his *prima facie* case as regards his job transfer request.

Again, plaintiff has also failed to establish his *prima facie* case by showing that similarly-situated white employees were treated more favorably. Although at the *prima facie* stage, plaintiff's burden is not "onerous" and he simply must show that he and the identified similarly-situated individuals engaged in the same conduct; i.e., requested a transfer to the Springfield office, and were treated differently. Plaintiff concedes that he cannot identify any individuals, outside of the protected class, who were allowed to transfer to the Springfield office with a "less than satisfactory" rating on their most recent applicable job performance appraisal.[14] Plaintiff has failed to establish Element 4 of his *prima facie* case as to his denial of transfer claim.

*Assuming arguendo*, plaintiff had established his *prima facie* case, defendant has articulated a legitimate, non-discriminatory reason for the denial of plaintiff's transfer request: plaintiff had a "less than satisfactory" rating on one of the categories of his applicable 2002 job performance appraisal and the General Manager of the Springfield office (Theret) declined to waive this condition.

Plaintiff attempts to prove pretext by again arguing that two (2) white employees were allowed to transfer into the St. Louis office with "less than satisfactory" ratings on their applicable job performance appraisals. In support of this contention, he submits his affidavit in which he states that he "has personal knowledge of Terry Darter and Ray Kempthorne transferring into the St. Louis office despite having overall `needs improvement' appraisals." Plaintiff's Affidavit.

---

[14]Plaintiff contends that all he has to show is "that people outside of his class were allowed to transfer to <u>any</u> office." Plaintiff's Memorandum in Opposition (#32), pg. 9. Plaintiff makes this general statement without any legal authority in support. The Court disagrees with the plaintiff's presumption that the standard is broad; even at the *prima facie* stage, the standard is not this broad.

Such evidence is insufficient to create a triable issue of material fact as to whether the defendant's reason for denying the transfer request was a pretext for race discrimination.

Firstly, plaintiff's affidavit is hearsay. Nowhere does he provide any foundation for his "personal knowledge". He provides no affirmative evidence, such as employee records or these employees' deposition testimony regarding their transfers, to support his assertion. The Court has no way to verify plaintiff's "personal knowledge", especially since he is simply a co-worker and not management personnel.

Secondly, Ms. Karas attests, as Senior Human Resources Manager, that Terry Darter transferred into the St. Louis office in 2000, did not have a "less than satisfactory" rating on any category of his most recent job performance appraisal, and his transfer was approved by Myles Midgely. Karas Affidavit. She further attests that Ray Kempthorne transferred into the St. Louis office in 2002, did not have a "less than satisfactory" rating on any category of his most recent job performance appraisal, and his transfer was approved by Rick Kruckemeyer. Karas Affidavit. Attached to her affidavit are the transfer documents related to these two transfers and which support her affidavit testimony. Karas Affidavit - Exhibits 2 and 4.

Finally, as stated before, at the pretext stage, the standard for showing that similarly-situated white employees were treated more favorably is "rigorous". Here, plaintiff attempts to meet this standard by identifying two (2) individuals who transferred into the St. Louis office, **not the Springfield office**, had no "less than satisfactory" rating on any category of their most recent job performance appraisal, and had different supervisors approve the transfer.[15] These are

---

[15]At his deposition, plaintiff identified the following people as having been allowed to transfer with a "less than satisfactory" rating on their job performance appraisal: Mimi Zielinski, Ray Kempthorne, Mike Finney, and Terry Darter. Plaintiff's Depo. (Def.Exh. A), pg. 205. However, in his post-deposition affidavit, plaintiff appears to limit his comparison to only Kempthorne and Darter. Nonetheless, the evidentiary record before the Court shows that Zielinski

significant differences which defeat the plaintiff's attempt to show that similarly-situated white employees were treated more favorably as to transfer requests.

Once again, plaintiff has failed to make a *prima facie* case of race discrimination as to denial of transfer claim; and even if he had done so, he has failed to establish a triable issue of material fact as to whether defendant's denial of his request to transfer to the Springfield office was a pretext for race discrimination.

In light of the Court's above-referenced findings, the defendant's motion for summary judgment will be granted.

Dated this ___26th___ day of September, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

and Finney also requested transfer to the St. Louis office, had no "less than satisfactory" rating on their most recent job performance appraisal, and had their transfers approved by someone other than Theret. Karas Affidavit and Exhibit 1 and 3 thereto.